Good morning, ladies and gentlemen. Welcome to the Ninth Circuit. We're very pleased to be with you today. We have three cases on the calendar that have been ordered submitted on the briefs. That was Menjivar-Rodas v. Barr, Echeverria-Perez v. Barr, and Becerra v. Coca-Cola. We are going to depart just slightly from the order in which the cases appear on the calendar. We're going to begin with Becerra v. Dr Pepper. Good morning, Your Honors. Jack Fitzgerald on behalf of Appellant Shana Becerra. With the Court's permission, I'd like to save five minutes for rebuttal. In this case, the District Court dismissed this consumer class action for two reasons. First, it found that a reasonable consumer would have no basis to infer anything more from Diet Dr. Pepper's advertising than that it is a calorie-free soft drink. And second, it found that we failed to plead adequate scientific causation to support our claims. On the reasonable consumer issue — Counsel, just looking at the structure of those two things, if we were to agree with the District Court on the first one, do we even have to get to the second one? That's probably true, and that's what the Second Circuit did in Geffner. I think what's interesting about the three decisions in the Second Circuit — two of them are memorandums. One of them is a published decision. The two memorandums found on the basis of the science, and the published decision found on the basis of the reasonable consumer standard. But none of those decisions found on the basis of both things. And if you were to review the transcript of the proceedings in the Geffner case, the one that was published, the panel actually seemed to be convinced that the science would support the claims, but wasn't convinced on the reasonable consumer standard. But if we were to assume that the science would support the claims, don't you still lose on that if you can't sustain the first point that a reasonable consumer is not going to infer anything from? You're right. We lose if we can't sustain that first point. But I would argue that we can sustain that first point. Okay. But that one you have to be able to prove no matter what. That's true. That's true. That's the reasonable consumer standard is what guides these claims here. Why don't we start with that one? Yes. So this really comes down to an issue of interpretation. And it's our position that interpretation is an issue of fact. And if we plead the fact of the interpretation, that fact has to be accepted as true. The district court found that fact was unreasonable or implausible for various reasons. But it's our contention that that fact had to be accepted and then determine whether it's plausible with that fact accepted, whether there's a legal basis for our claims. But even if there had to be some sort of reasonability standard behind that fact, we plead lots of things that I think support the reasonable consumer standard and the interpretation that we plead. For one thing, just common sense and common experience tells us that people drink diet soda to avoid the negative health consequences that come along with regular soda, including weight gain because of its calories. Is that true? I mean, I'm not sure that it's common sense. Your Honor, I would submit that it is. I know a lot of people that would argue just the opposite, that actually a regular soda is more healthy and that that seems to be the common assumption. Well, I don't think that there's a lot of people arguing that sugar beverages are more healthy than diet beverages. They're one of the leading causes of heart disease and diabetes because of the sugar. But if we get to use common sense, which tends to draw on our own experience, you know, I do get to cite my wife who doesn't like the taste of regular Coke and will only drink a diet Coke. It has nothing to do with the absence of the taste. It's a different product. And my friends who drink Coke regularly claim that they can tell the difference immediately between the two. Look, I saw a comedian the other night and he was talking about how he ate all this food and then he put nonfat milk in his coffee because you have to save calories where you can. And we know people go to McDonald's, right, and order the Big Mac and the Big Fries and have the diet Coke. And there's sort of a joke about that. But the truth is, people do choose diet beverages to make a choice to avoid calories where they can, even if they eat junk food. Okay, but does that help your argument? I agree with your statement there that they choose it to avoid calories. Yes. I think that's divorced from the health benefits, which are a little more complicated. Okay. So the courts have basically said that diet indicates only that it lacks calories and sugar and nothing more. And what I would submit is that that fact that it lacks calories and sugar doesn't have any import to consumers other than for health reasons or for body weight reasons. You know, a difference in calories doesn't mean a difference in taste. Well, it does. I mean, there's a difference between the aspartame and the corn syrup. That's true, but all I'm saying is something like that calories themselves don't provide taste. So what calories provide is energy and they can be turned into fat and so forth. You can do different things to make calories taste differently, but the have no import other than as relates to the. So let me ask you, there's Coke's here. Is there a, I don't know, is there a diet doc? Is there a Dr. Pepper zero in the same? I don't believe so. Is there another low calorie Dr. Pepper 10? Yeah, there you go. Dr. Pepper 10. So your argument would be, I mean, under your theory, Dr. Pepper 10 is fine because all it does is say it's just a description of how many calories. That's correct. It does not say diet. It does describe how many calories and even zero calorie Coke or zero sugar. Coke is, is accurate and descriptive, but diet, we would submit goes above and beyond merely indicating zero calories. But why wouldn't, why wouldn't Coke Coke zero or Dr. Pepper zero be misleading? Because even though it's accurate, it suggests that you should buy this product because it contains, it contains no calories. Yeah. So, and therefore it might be a part of all, you know, all the scientific studies that you're buying, that you're, that you've advocated here, that it's, it's not as healthy even though it lacks the calories. So I think it's possible that if it was just diet Coke zero, that that could be misleading under our theory. My, I thought it was diet Coke zero sugar or zero calories, which would be more specific in the descriptive, but if it was just zero, it might, it might be misleading under our theory, but that's not what our theory. I mean, we're here on, on diet Coke. So, you know, that's an interesting question, but I think in diet, it's really, um, at least a lot more clear. And one thing I'd like to point to, we've, does, does Dr. Pepper, this is one thing I was looking for in the complaint. Do they make any health claims about weight loss on the product? No, they don't make any health claims about weight loss on the, on the can of Coke or in any of their advertisements or not in their current advertisements. But I think what you have to understand is these products became ubiquitous in the, in the sixties and seventies as, and were heavily advertised at that time as weight loss products. And it became part of our culture that this is just what you do to avoid the calories and to avoid the weight gain with regular stuff. And so nowadays they really don't have to advertise it that way. Um, as explicitly they do. I think we have some examples. Well, you're describing right now. Isn't part of your complaint. Uh, it is. It actually is pled to as, um, there's some old advertisements in there, um, to, to give validity to our interpretation to show, do you remember where I'll go if I could read it, but if you had the sites, I do, um, so it's ER 50 through 52 approximately. It's the third amended complaint. Um, actually it's even more than that. Third amended complaint paragraphs about 15 through 35 or so that, that range, give or take. Um, one thing I'd like to point out is in the appellee's response brief on page 24 of the brief. Um, this, there's a listing of, of dictionary definitions, and this is one of the things we provided. And, and one of the things they point out is we, we used only the noun version as in a diet and not the adjective version. And so they, they gave the adjective versions where the, the, um, definitions we provided. And on page 24, one of the adjective definitions is suitable for consumption with a weight reduction diet. Dietetic diet, soft drinks. And that's really what we're getting at here is people believe these are suitable for, uh, consumption with a weight reduction diet. That's an adjective. And I don't think people go into a store and have a very nuanced, um, uh, process of thinking like this is being used as an adjective, not as a noun. And therefore it only means. And I think that, uh, uh, opposing counsel's, uh, argument about the noun versus adjective versus verb, uh, was well taken, but the more I've thought about this, the diet, Dr. Pepper diet, Dr. Pepper diet, it probably is a noun, but it has, you have to read it as sort of one word that is, it's a diet, Dr. Pepper, no spaces between diet and Dr. Pepper. It's, it's a single thing. It's a single entity, which is different from Dr. Pepper, just as diet Coke is something very different. If you, in the South, if in the South, people are going to, are going to say, come on over for Cokes, right? And they could be serving you root beer. Um, and if you're getting, getting a Coke, then they haven't, they haven't, nobody said whether you wanted a diet Coke or a Coke, because those are two different products. And so it seems to me that in our, in the way that these things have entered into the culture at this point, that diet Coke is just one word. Uh, I agree. It's a different product. And I think in the culture at this point, people believe that that's the healthy choice to make. And the science that we have suggests that that's not as healthy a choice in comparison to regular soda, as people believe. Um, just a few more points before I run to my time. I'll ask you this, in order to preserve your claim, you just have to say some people think it's, that they're going to lose weight and they don't lose weight or have to have surveys or what do you have to do to shore this up or just to pick up anybody on the street and say that I wanted to lose weight and I took diet Dr. Pepper and I didn't. Well, at this stage, we just have to plead a plausible claim, but in order to think we're going to have to have, um, evidence of what a reasonable interpretation is that could be through a survey or otherwise through defendant's documents, for example. Um, and we're going to have to show science, show scientific evidence through an expert. But what's important is the scientific evidence doesn't have to be causation in a false advertising case. What we have to show is that reasonable consumers might be misled by the statement diet in light of what the science says. And if the science is somewhat equivocal, but it's going in a direction and it's, and it's concerning, then reasonable consumers could be misled. I would submit and I'll, I'll reserve the rest of my time. Thank you, Mr. Fitzgerald, Mr. Young. Thank you, your honor, Evan Young for Dr. Pepper seven up a number of the things that were, were discussed or covered in the briefs. I think that the second circuit has covered the waterfront. Quite frankly, the Geffner case references all of the other decisions, including the two prior ones. It doesn't disclaim the science, but it does focus. I think on what is the easiest aspect of this case where, where the court has been focused today, uh, whether diet Dr. Pepper is all one word or whether it's three words or two, the function of the sound diet is what is the heart of this complaint. And the district court, like all five district courts that have considered it and all eight circuit judges on the second circuit and three different panels to consider it, found that it is implausible for several different reasons that a reasonable consumer could possibly understand that because diet Dr. Pepper has the sounds diet in it, that it makes promises about weight loss or health benefits or anything. And the Geffner opinion makes two specific points that really could resolve the case here and the others that are waiting for this court. Uh, the, the, the diet Pepsi case is waiting and judge Donato's court, for example. And that is first, whenever you have a diet soft drink, that word refers to the reference beverage, diet Coke, diet Pepsi, diet Dr. Pepper, it's not comparing it to water or medicine or air or something else. It's the reference beverage. And then secondly, the word diet is saying to the reasonable consumer. And it's part of our language. It is ubiquitous as part of our culture that it's reduced in calories or like diet, Dr. Pepper, zero calories. But, but doesn't that beg the question about, well, then why don't you just say Dr. Pepper zero, uh, as opposed to diet, Dr. Pepper, there must be some difference between those two uses. And how do we account for that? Well, it's historical. This is a phrase that was used long ago. And when Congress specifically grandfathered in, shall we say in 1990, the soft drink labels that use the word diet, the statute says you can use the word diet as long as, as of this date in 1989, October 25th, 1989, it was part of your, your, your brand name. And you satisfied the requirements in the CFR for low or reduced calorie products, which require a reduction of 40% or a third of the calories. And of course, dropping it all the way to zero means that if it's true, that it's part of our language, as all the dictionaries say, they use diet soda as the exemplar of when it function as an adjective, if it's, if that is true, if the ordinary person in our country reflected by all the dictionaries that the plaintiff herself cited, understand it to have that meaning, then it is not plausible that something that goes all the way down to zero wouldn't satisfy it. It's not what Congress meant. It's not what the FDA means. It's not what all the other judges who come from a broad jurisprudential, uh, set of backgrounds, all different kinds of approaches to all different areas of the law, all unanimously saying, this doesn't work. Uh, that, uh, finding a factor. What is that decision about? It's a Federal pleading standard. Everybody knows that this is the way it is. It's, it's, it's, it's, it's following what this Court has followed in cases like Ebner, and that is taking the Supreme Court's guidance in Iqbal that you have to use judicial experience and common sense in ensuring that Federal courts are not abused by bringing through claims that are simply not plausible and, and, and forcing the processes of summary judgment or even trial, as plaintiff here insists, simply by alleging that a consumer would regard this as, as, as misleading. I get it. Trial. Kennedy. But they claim that they've got some kind of a survey that shows that a lot of people feel this way. How do we use this? Well, I think the, the survey, you know, makes a number of, of, there are a number of points about the survey that I think are quite helpful to us. Let me just knock through a couple of them. First, that same survey was presented to the Second Circuit in all three cases and was rejected in the Geffner case, which turns on the meaning of diet. It didn't even address this in the briefing and everything. They, they, they thought it was so insignificant there. So that's just number one as, as a backer, not that you're in any way bound by it. But it was not persuasive to any of those eight judges. One judge sat on two panels in that, that court. Secondly, all that survey, I think, does is, is assess expectations of the reasonable consumer vis-a-vis Dr. Pepper. And it's not disputed by anyone that drinking diet Dr. Pepper will indeed be better for your weight than drinking the same amount of Dr. Pepper. Both of them are delicious, refreshing beverages. If those are your two options, and if that's what the comparator is, as Geffner says, we're comparing it to the reference beverage, then it's not really in dispute that drinking something with zero calories. Well, I think part of the problem with that argument is you say it's undisputed, but I think that's where it gets a little complicated because the science does seem to dispute that, that apparently there's some basis to believe or some, whether it's causal or not, that if you're drinking diet soda, it may be that that diet soda is fewer calories, but for some reason you end up either eating more calories throughout the day or something like that. And comparing it to water, let's just assume for the second that that's true. All of those studies have, have been thoroughly reputed by every judge as well in terms of a causal link. There is some correlation. There are lots of reasons for it. And my friend on the other side has explained, well, it can't all be reverse causality, which is the idea that I'm drinking the diet Dr. Pepper because I'm But some of it is, they acknowledge that some of it is, and the studies say that. All that does is to say that whatever this amount, this Delta might be, some of it we can wipe away as reverse causality. And then the rest of it, whatever is left is still just correlation and association. And Judge Orrick was right. Neither in the law nor in science is correlation causation. And causation is something that they allege. That's their complaint. It's not that that's something just that the, because you're judges and causation is often talked about as an element. You're going to insist on it. Well, the whole allegation here is diet. Dr. Pepper causes weight gain, causes health maladies. And there isn't any science that plausibly prove that it doesn't cause it causes weight gain, or do they just need to prove that it doesn't reduce weight under their theory? It doesn't. Um, I mean, cause diet, presumably diet, you're actually trying to lose weight. So if they said, Hey, you're drinking this and it doesn't do anything for your weight, would they still have it? Would they have a claim at that point? Well, they wouldn't because of the first, because of the first argument is really the key points of whatever might be true in the studies. And the reality is that every judge to have written, do you think we need to get to the studies or you think we can just decide this case on the reasonable consumer? I think you can do that just like the second circuit did. It's the, it's the, frankly, the cleanest way. There's, there's something about going through all of these studies that perhaps at least for your law clerk's benefit, if you decided not to, to force them to read all of those studies would, would, would make them think more fondly of you in their future years, but you don't have to do it for the more important reason that as the second circuit said, the word diet conveys a message that it's relative to the brand beverage and it contains fewer calories here, no calories. That's the entirety of the message that a reasonable consumer would convey. And the, the labeling is entirely accurate on those points. It says diet, Dr. Pepper, there was zero calories that are reflected. This is so different from cases like Williams versus Gerber, for example, you know, that to the extent that that case is, is one that has been used to allow for claims to proceed, it's because there were pictures of four different fruits. The, the label said that it was specifically designed for your children to grow up healthy and strong. It was saying that, that, that this is made of all other natural ingredients. And it turns out there was just a little bit of one fruit juice, which was not even one of the fruits that was drawn on, on the picture, and the rest of it was sugar, it was candy, in other words, that was marketed to parents as, oh, this is a very healthy choice. You know, you should buy this as responsible. So would, would, would the plaintiffs have a case if, if Dr. Pepper was making advertisements separate and apart from the naming of it that implied that you could lose, that you would lose weight by drinking diet, Dr. Pepper? Well, I, I think that if the science suggested something otherwise, and, and, and it, it, and it doesn't, it doesn't. But at least at that point you would get, the plaintiffs would get past the first prong, if, is your, no, the first prong of the reasonable consumer, if diet, Dr. Pepper were running ads saying, hey, drink diet, Dr. Pepper, and, you know, you'll have your swimsuit body that you want. That all would just be, be puffery. And, and the, the second circuit addressed that as well. The, the models and the beautiful people, that's what you use in every advertisement. But, well, but if they, that's only because they don't expressly say it. If they expressly said it in an advertisement, would the plaintiffs then have an argument? They, they, I don't know. I mean, it's, it's, it's, it's hard for me to know what the label would say. But if you're saying the label's exactly the same, but they're blanketing the country with, with statements that, like, this is the numerical weight loss medicine, if, if you reject- What if Jenny Craig throws diet Dr. Pepper into a, you know, an endorsed beverage and, and puts it out in their meal plans and sends a six packet diet Dr. Pepper in their weight loss plans? Does that change the analysis? Well, well, it might for Jenny Craig, I suppose, but I'm not sure that it would for, for, for us. And again, all of this is in this hypothetical world. And I, I recognize that. But let's, let's talk about the Jenny Craig for a second. When something is labeled diet and she sends out, you know, the diet meals, Weight Watchers sends out the diet packages. If I eat four Weight Watchers lasagna packs, I may as well just go and have a cheeseburger. Because diet does not mean you will lose weight inherently. That you will not, it means that it's something that will help you because of the reduced caloric intake or something like that. But to, to say that, that it, it's like drinking water, that it will have no calories, if that's what diet is limited to, that's not dieting. That is fasting or, or starving, right? And so, I don't think that necessarily even under that hypothetical, if you accept the Second Circuit's definition, which is that, that this is part of our language now, that it means that it's lower calories than the, the, the brand beverage, and that, that it is just relative to it and not to something else. Then I'm not sure that that would necessarily be false and misleading, but I, I, I agree it would be a different circumstance. That's not what Dr. Pepper's doing. There are, are ads in the record going back several decades. Well, and I guess that's why I was asking the question because there are ads apparently going back several decades and what bearing does that have on today? I guess we need to look at what the common understanding is today. Although, I mean, I, the class presumably are people who may have drunk diet Dr. Pepper back when those ads were running. I mean, I, I, or the purported class. So, I mean, does it have any bearing that diet Dr., that Dr. Pepper apparently, when was the most recent ad that they ran in that effect? I think there's something that's referenced in the very early part of this century that's in there. A lot of the ads from earlier periods were under different names even. And all of those are presented to all of the judges. They were presented to all three Second Circuit panels, which said that there was nothing in those ads that made any promise. There are, there are ads that are shown that, that have a picture of a cake, you know, five layer cake, milkshake, you know, stack of donuts, things like that. Those are in the complaint itself. And if you're comparing diet Dr. Pepper to a dessert, saying this is a diet dessert in effect, what again, you're making is the analogy to Dr. Pepper, you know, it's a delicious, refreshing beverage of 150 calories per can, it's not comparing it to water. Nobody thinks of water as a dessert. If you're taking diet Dr. Pepper and you're, you're, you're sort of skinnying down the cake or putting the straw on the donuts, and you can sort of have this in a guilt-free way, it's compared to a Dr. Pepper, not compared to water or not compared to medicine. So all of those, you know, long ago, advertisements, which are way outside the period of limitations, don't say anything. They were available when Congress in 1989 specifically said, you can keep this, this label as long as you meet the requirements in the CFR, which we unquestionably do, you can continue to call it diet. And that's what, and I think that reflects the fact that Congress, the FDA, your fellow judges across the country and the American people as reflected in virtually every dictionary, think of this as an open and shut case. And when you're, when you're asking what a reasonable consumer thinks, how often is it the case that you can actually look to a dictionary, not just to get general principles that you will then apply, but literally for every definition to expressly talk about the specific feature of the specific product that's being challenged as false or misleading and to say, no, no, what it means is it's a lower calorie version of the reference product. That's why this really ought to be an easy case. If this case cannot be dismissed the way that all the judges have done it, it really honestly is hard to imagine that the cases like Ebner, like the Starbucks Furesh versus Starbucks, 12 ounces of iced coffee. Well, Mr. Furesh surely did believe that that meant I got 12 ounces of coffee and then I get some ice on top of that. But no reasonable consumer could believe that. You could, you could believe that. I have no doubt that Mrs. Becerra truly believes that drinking diet Dr. Pepper would cause her to lose weight. But that is not what is reasonable. And it's an interesting question where you draw the line, because the studies, at least, suggest that 12 to 13 percent of the people that they studied suggested they thought they would lose weight. And I guess your position is that's not enough. What if those studies had come back and said 60, turns out 60 percent think that you're going to lose weight if you drink Dr. Pepper? And we're all those judges sitting here saying, well, we don't think that. We don't know anyone who thinks that. But you've got studies presented that say 60 percent do. Would that change the analysis on the reasonable? Well, the survey that Judge Tyler mentioned that I think is where you may be drawing it from, you know, the last point that I would have made is it's essentially conclusory on that. We have no basis to know what any of that means. But it does reflect, I think, that anyone answering that question, given the understanding of what diet means in the soft drink context, thought I could lose weight compared to drinking the Dr. Pepper, which they surely would. That's not really in dispute. And so all that that does, I think, is reflect you would expect it to have been a higher number, frankly, than what we saw. And that's why I think the survey, if anything, locks down what should already be based on the English language definition in their type case. There are no further questions for me. Thank you, Mr. Young. Mr. Fitzgerald, you have time remaining. Thank you. Turning first to the advertisements, which I think is an interesting issue. On page eight of our third amended complaint, which is excerpt of the record page 51, there's two or three modern, relatively recent graphic advertisements. And what these show is a diet Dr. Pepper can being sliced open and it's a piece of cake inside. And what it says is nothing diet about it. And the point of this advertisement is this tastes just as good as bad food for you. But it's not bad. It's good food. It's not going to it's like eating a cake, except you're not going to gain weight. And that's the very premise of our lawsuit, is that that's wrong, not. But I want to also make a distinction here. We sort of allege two things. Number one, that it can cause weight gain. But number two, also that it just does not help in healthy weight management. So what people expect is that diet soda like water is innocuous as to body weight. If I drink it because it has no calories, it's not going to make me gain weight. Maybe I won't lose weight, but it's definitely not going to make me gain weight. And if there's evidence here that it may make people gain weight, then that then that's a misimpression. And the survey that we offered actually had 75 percent of people in the bucket of either think it's going to lose weight or think it's going to at least do no harm. It's going to at least help me not gain weight. That's 75 percent of people. The district court rejected the survey because it found that we didn't have other evidence of plausibility. But I would argue that it wasn't at liberty to reject the results of the survey and that that decision, that decision was in error. One other thing I'd like to point out that I didn't get a chance to earlier is that we have an omission claim based on 21 CFR section 1.21. It's paragraphs 63 and 64 of our third amended complaint. And what that says is if you make a nutrient content claim like diet, then you have to in light of regular consumption. And this court recently upheld a claim based on that statute. And I think that the the only way Dr. Pepper moved to dismiss that was on the basis of of preemption. The court found there was no preemption, but it sort of didn't rule otherwise. And it didn't acknowledge that it was a separate claim. And it sort of, I think, threw the baby out of the bathwater in that case. I think at least that omission claim should be reversed. Can I ask what when most of your claims or maybe all of your claims sound in fraud, is that right? And does that affect how we because fraud is judged at a higher pleading standard, would it be different if you had claims that didn't sound in fraud for a motion to dismiss? Well, it would be easier for us if they didn't sound in fraud, but they do. We're subject to 9b and I think we meet the standard of laying it out. Some unlawful claims based on misbranding don't have to sound in fraud. But but one point to one talks about being misleading. So it probably does sound in fraud. So just to sort of crystallize the issues here, what I want to say is this is at the pleading stage. At the pleading stage, the standards are liberal. This court has a long history of saying that we we dismiss only in rare circumstances. Those rare circumstances tend to be where the advertisement itself makes it impossible for the for the person to have been misled, such as where it disclaims or explains the the the issue. And that's not the case here. I would argue that the whole import of diet and zero calories to people is I can drink this without having any negative effects on on my weight or metabolic health. And the science shows that's clearly not the case. At least there's enough science that we've pled to to bring us into expert testimony to see if this thing to see what these claims bear out. But I think, you know, our survey shows very clearly that people interpret diet in this way. There's there's a long advertising history here. We talked about how in our studies, all of the scientists in the studies sort of start their introduce their studies with the idea that diet sodas have long been advertised as a, you know, to help with weight. And so bottom line is, I think, given everything we plead here at this stage, if all of the things we plead as facts are accepted as true as they must be, then this has to go. Pass will be twelve, six into discovery unless there's any more questions. Thank you. No, thank you, Mr. Fitzgerald. Sarah versus Dr. Pepper, seven up is submitted. The next case on the oral argument calendar will be a lot to have versus JetBlue Airways Corporation. And I will expect counsel to come and correct my pronunciation.
judges: Siler, Bybee, R. Nelson